Slip Op. 14 - 127

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| DIAMOND SAWBLADES MANUFACTURERS COALITION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : : | Consol. Court No. 06-00248 |
| Defendant, | : : | |
| and | : : | |
| EHWA DIAMOND INDUSTRIAL CO., LTD., SH TRADING, INC., and SHINHAN DIAMOND INDUSTRIAL CO. LTD., | : : : : | |
| Defendant-Intervenors. | : : | |

**OPINION**

[Sustaining remand results on investigation of sales at less than fair value of diamond sawblades and parts from the Republic of Korea.]

Decided: October 29, 2014

*Daniel B. Pickard* and *Maureen E. Thorson*, Wiley, Rein & Fielding, LLP, of Washington, D.C., for plaintiff Diamond Sawblades Manufacturers Coalition.

*Jeffrey S. Grimson*, *Kristin H. Mowry*, *Jill A. Cramer*, *Sarah M. Wyss*, and *Daniel R. Wilson*, Mowry & Grimson, PLLC, of Washington, D.C., for the consolidated-plaintiff Hyosung D&P Co., Ltd.

*Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, *Jr.*, Assistant Director.  Of Counsel on the brief was *Aman Kahar*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Bruce M. Mitchell*, *Andrew B. Schroth*, *Max F. Shutzman*, *Mark E. Pardo*, *Ned H. Marshak*, *Andrew T. Schutz*, and *John M. Foote*, Grunfeld, Desiderio, Lebowitz, Silverman & Kledstadt, LLP, of Washington, D.C., for defendant-intervenor Ehwa Diamond Industrial Co., Ltd.

*Michael P. House* and *Sabahat Chaudhary,* Perkins Coie, LLP, of Washington, D.C., for defendant-intervenors SH Trading Inc. and Shinhan Diamond Industrial Co. Ltd.

Musgrave, Senior Judge: Familiarity is here presumed with the prior opinion, 37 CIT ___, Slip Op. 13-130 (Oct. 11, 2013), remanding several issues concerning the administrative investigation of sales at less than fair value of *Diamond Sawblades and Parts Thereof from the Republic of Korea*, 71 Fed. Reg. 29310 (May 22, 2006), as amended by *Diamond Sawblades and Parts Thereof from the Republic of Korea*, 75 Fed. Reg. 14126 (Mar. 24, 2010).

I.  *Background*

The order of remand provided 115 days for filing final results of redetermination. One week before due, the defendant, International Trade Administration, U.S. Department of Commerce ("Commerce"), moved to extend that deadline by about a month. The reasons therefor included averment that "personnel that originally handled this matter are no longer assigned to the case, and a new set of people has had to familiarize themselves with the issues." ECF No. 154 (Feb. 4, 2014) at 3. The motion was granted, albeit belatedly (*cf*. *id*. *with* Slip Op. 13-130 at 52), and in the meantime Commerce had requested certain information from Ehwa Diamond Industrial Co., Ltd. ("Ehwa") and from SH Trading Inc. and Shinhan Diamond Industrial Co. Ltd. (collectively "Shinhan"). After receiving extensions from Commerce, Ehwa and Shinhan submitted their respective responses on February 14, 2014. On February 24, 2014 and February 28, 2014, in response to Ehwa's and Shinhan's responses Diamond Sawblades Manufacturers Coalition

("DSMC") also requested extensions of time to submit factual information, for which Commerce established a deadline of February 28, 2014 and March 4, 2014, respectively.

The record does not reflect receipt of any factual information from the DSMC directed to Ehwa and Shinhan's responses by that time, but on March 14, 2014, Commerce requested additional information from Ehwa and Shinhan regarding their Section E questionnaire responses. On March 26, 2014, Commerce moved for a second extension of time for filing the remand results, which was also granted. ECF No. 154 (Mar. 27, 2014). On April 11, 2014, after receiving extensions of time from Commerce, Ehwa and Shinhan submitted their Section E questionnaire responses. On April 22, 2014, and April 24, 2014, the DSMC requested extensions of time to submit factual information in response to Ehwa's and Shinhan's responses for which Commerce established a deadline of April 25, 2014, which was later extended until April 28, 2014. Commerce received factual information from the DSMC on April 28, 2014. On May 5, 2014, Commerce established a deadline for Shinhan and Ehwa to submit rebuttal comments to the DSMC's factual information submission, and also requested additional information from Ehwa. After yet another deadline extension, Commerce received rebuttal comments from Ehwa and Shinhan on May 9, 2014 and additional information from Ehwa on May 12, 2014.

On May 23, 2014, upon release of its draft results of redetermination Commerce established an extremely short schedule within which interested parties were to submit comments. Commerce did not receive comments on its draft results by the deadlines established, so it dated and issued its final results of remand ("RR") as of June 18, 2014, which are summarized as follows.

Commerce recalculated Ehwa's United States indirect selling expense ("ISE") ratio, using the information obtained at verification for ISEs incurred by Ehwa's U.S. affiliates, and recalculated Ehwa's margin based on this revised ISE ratio that reportedly includes expenses incurred by both the Stone and Construction Division and the Industrial Division. RR at 3-5.

Commerce reconsidered its determination not to include Ehwa's inter-company expenses with the company-specific expenses of selling to unaffiliated customers. This resulted in reallocation of total reported ISEs among the sales of Ehwa's U.S. sales affiliates. RR at 5-9.

Commerce requested Ehwa and Shinhan to provide, or supplement the record for, further-manufactured ("FM") sales, cost (section E questionnaire responses), and constructed value (section D questionnaire responses) data for any FM sales if their value-added calculations so required (*i.e.*, 65-percent-or greater value added in the United States). *See* 19 U.S.C. §1677a(e); 19 C.F.R. §351.402(c). Commerce incorporated the FM sales and cost data, as well as the home and U.S. sales and cost data from the original investigation, and used the programs from the final section 129 determination[1] for its margin calculations. By incorporating this data, Commerce claims it also accounted for the costs of further manufacture or assembly in the constructed export price profit ("CEP profit") and margin calculations. RR at 10-17.

Commerce also reexamined the inputs Ehwa and Shinhan obtained from their affiliate suppliers for purposes of the major input rule.[2] *See* 19 U.S.C. §1677b(f)(3). Analyzing those inputs

---

[1] *See Notice of Implementation of Determination Under Section 129 of the Uruguay Round Agreements Act and Revocation of the Antidumping Duty Order on Diamond Sawblades and Parts Thereof from the Republic of Korea*, 76 Fed. Reg. 66892 (Oct. 28, 2011).

[2] When determining whether an affiliate-supplied input is major, Commerce considers what
(continued...)

in accordance with that rule's "transactions disregarded" predicate, 19 U.S.C. §1677b(f)(2), Commerce found them "not major in relation to the total cost of producing the merchandise under consideration." RR at 19. With regard to Ehwa's inputs, as part of its analysis Commerce found the record at hand distinguishable from the "two percent" major input finding of *Notice of Final Determination of Sales at Less Than Fair Value: Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, From Japan*, 61 Fed. Reg. 38139, 38162 (Jul. 23, 1996) (comment 12), because that determination involved "a unique product that required tens of thousands of inputs, each of which accounted for a very small portion of total production cost", in contrast to diamond sawblades, which have "have relatively few inputs . . . and a small number of raw material inputs account for the majority of the production cost (*e.g.*, coils used to produce the cores, diamond segments, labor [*sic*], and factory overhead [*sic*])." RR at 21 (citations omitted). With regard to Shinhan's inputs from its non-market economy ("NME") affiliate (and the DSMC's original case-brief argument that such transactions should be re-valued using NME surrogate value methodology for purposes of determining whether they are major inputs), Commerce found that it could not consider the inputs "major," as compared to the total cost of manufacturing, even when adjusted by the higher of the transfer price or Shinhan's own cost of production for the input.[3] RR at 26-27. Commerce also determined Shinhan's remaining affiliates' input transactions

---

[2] (...continued) percentage of the input is procured from the affiliated party as well as what percentage the input represents in the total cost of manufacturing. *See*, *e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From Ecuador*, 69 Fed. Reg. 76913 (Dec. 23, 2004), and accompanying issues and decision memorandum at cmt. 28.

[3] Commerce further explains that it assumes that where a company has the production
(continued...)

not major when compared or adjusted to available market values or surrogate market values (if market values were unavailable) for them as well as the affiliates' cost of production.[4]  RR at 27-30.

Additionally, Commerce provided a fuller explanation of why the costs of purchases of a particular input from unaffiliated NMW suppliers were not adjusted.  After identifying and describing what it considers the relevant facts of record on the issue, Commerce reiterated its determination that the existence, *arguendo*, of any NME-to-ME pricing distortion(s) had a negligible impact on Ehwa's reported total production costs.  RR 30-33.

Commerce further addressed the issue of accepting during verification Shinhan's offer of consolidated financial statements of its parent company, Technoplus Co. Ltd. ("TPC"). Technically, those were belated, since the request for the statements was covered by Commerce's questionnaire response request.  Slip Op. 13-130 at 41, referencing PDoc 312 (Apr. 4, 2006). Commerce's position here is that up until the time it undertook verification, it had not provided Shinhan notice of the nature of the deficiency and a remedial opportunity in accordance with 19 U.S.C. §1677m(d), and therefore their acceptance at verification was "reasonable".  RR at 33-36.

---

[3] (...continued)
capability, the "market" price they are willing to pay for the input likely would not be significantly higher than their own cost to produce the input; as such, it deems a respondent's own cost of producing the input as a reasonable surrogate when market price is unavailable.  *See* RR at 24.

[4] Commerce's hierarchy for establishing market price in the application of the transactions disregarded and major input rules, 19 U.S.C. §§ 1677b(f)(2) and (3), respectively, is to rely on a respondent's purchases of the input from unaffiliated parties, or if those are unavailable then the affiliate's sales of the input to unaffiliated parties, or if those are unavailable then "any reasonable method" to confirm that the affiliated prices reflect arm's length transactions.  *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value and Affirmative Critical Circumstances Determination: Bottom Mount Combination Refrigerator-Freezers from Mexico*, 77 Fed. Reg. 17422 (Mar. 26, 2012) and accompanying issues and decision memorandum at cmt. 16.

Commerce thus claims it reviewed the facts on the record and redetermined the issues pertaining to Ehwa's ISEs and Ehwa's and Shinhan's FM sales, pursuant to the order of remand. The final results of Ehwa's and Shinhan's recalculated margins are "0.00" for both.

## II. *Discussion*

The DSMC argue they were unable to obtain and analyze all of the remand information and draft comments thereon within the time frame provided by Commerce, and accordingly requested an extension of time, on June 2, 2014, in order to submit their comments. *See* Remand PDoc 43. By June 9, 2014, Commerce had not taken action on that request, so on that date the DSMC attempted to submit these arguments: that Commerce had failed to adequately explain or support its determination on remand not to apply the major input rule or to adjust the costs of purchases from unaffiliated non-market economy suppliers; that the calculations provided by Commerce as to the major input rule did not, in fact, show that the relevant inputs were not significant or that they did not merit adjustment or other consideration; that Commerce had not provided a reasoned basis, in light of the zero margins calculated on remand, for finding that it was "[im]practical" to apply the major input rule and that any distortion resulting from unadjusted NME supplier prices would be "negligible." *See* DSMC Cmts., Ex. 2. According to the DSMC, "[i]mmediately subsequent to the DSMC's submission of its comments, the agency issued a letter rejecting the DSMC's [earlier submitted] extension request as untimely filed." DSMC Comments at 3, referencing Remand PDoc 44. Two days later, Commerce also rejected the DSMC's substantive comments. *See* Remand PDoc 46.

    Consideration of the DSMC's substantive arguments here appears precluded by the doctrine of exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).[5] Procedurally, the DSMC claim they could not have provided meaningful analysis and commentary on the draft of the remand results (the final version of which is 37 pages) within the two "business" days administratively provided, or even after Commerce released its draft results -- at 5:00 p.m. on the Friday just before the start of this year's Memorial Day weekend. Arguing that their situation is distinct from *Sichuan Changhong Electric Co. v. United States*, 30 CIT ___, 466 F. Supp. 2d 1323, 1328-29 (2006) (holding a four-day comment period not unreasonable), on the ground that in that case the party concerned had actually been able to provide meaningful commentary within that time frame, the DSMC essentially move pursuant to USCIT Rule 60(b)(1), without so stating, for relief from a "final proceeding" to require Commerce to consider the points they desired to make. *See, e.g.*, *Roquette Freres v. United States*, 6 CIT 329, 331 (1983) ("Jurisdiction once vested in the court is neither so fleeting nor illusory as to dissipate upon the court's exercise of its inherent discretionary power to require further deliberation by the administrative body."). The defendant and defendant-intervenors point out, however, that if the comment schedule of this matter appeared unreasonable,[6]

---

[5] "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against *objection made at the time appropriate under its practice*." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (italics added). That, of course, begs the question here.

[6] Ehwa also notes that the amount of time provided for commenting on the draft results is consistent with the amount of time "usually" provided by Commerce for such comments. Ehwa Br. at 4 n.2, referencing Draft Results of Redetermination at 14, C-580-869, IA Access Barcode 3217073 (filing draft results at 5:18 p.m. July 22, 2014 and requesting comments no later than July 25, 2014); Draft Results of Redetermination at 19, A-570-888, IA Access Barcode 3210652 (filing draft results at 10:37 a.m. June 23, 2014 and requesting comments no later than June 25, 2014).

Consol. Court No. 06-00248                                                                                          Page 9

a request for an extension during the allotted time would have been a palliative course. *Cf.* 19 C.F.R. §351.302 (extension of time limits).

Agencies are generally "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 544 (1978) (internal quotes and citation omitted). That includes setting deadlines for commentary on remand results. On the one hand, the fact that the records of both proceedings referenced by Ehwa show requests for extensions of time to respond to their respective draft remand results does not support finding the imposition of such short deadlines for providing comments on draft remand results reasonable. *See* C-580-869, IA Access Barcode 3217352; A-570-888, IA Access Barcode 3211465. On the other hand, notwithstanding the DSMC's arguments as to the complexity and number of issues actually addressed on remand, the court is not in a position to decide whether the draft remand results before the court inherently *required* further comment from the parties at the time they were issued, a standard by which the reasonableness of the deadline for comments announced at that time ought also be adjudged without veering into consideration of the DSMC's substantive arguments. The draft and final remand results do not appear patently erroneousness in their own right, and the papers do not argue sufficient equitable reasons for ordering further administrative consideration. Since the results of remand appear in accordance with the prior opinion, they will be sustained and judgment to that effect entered.

**So ordered**.

Dated: October 29, 2014                           /s/  R. Kenton Musgrave
       New York, New York                      R.  Kenton Musgrave, Senior Judge